THE PEOPLE OF THE STATE OF NEW YORK ex rel. NEW YORK FIRE INSURANCE EXCHANGE, Appellant, *v.* JESSE S. PHILLIPS, as Superintendent of Insurance of the State of New York, Respondent.

WILLIAM F. CONRAN, Intervener, Respondent.

Insurance Law — fire insurance — rate-making associations — jurisdiction of superintendent of insurance to order removal of discrimination — rate-making association may adopt suitable rules as to tests — rejection of device on ground that it had not been submitted to and approved by relator's testing agency permissible — after test, if discrimination is alleged, powers of superintendent may be invoked.

1. To correct discrimination in the fixing of rates by rate-making associations, authorized under the Insurance Law (Cons. Laws, ch. 28) to make rates to be used by fire insurance underwriters, section 141 of that law provides suitable power in the superintendent of insurance to entertain complaints and after a full hearing to order its removal. The jurisdiction of the superintendent of insurance, however, does not extend to the decision as an original proposition of the

merits of rival automatic sprinklers. It extends only to the question whether all are treated alike and treated fairly. If equality and fairness to all is found, no discrimination can be said to exist.

2. Where, therefore, relator, a rate-making association, has established a testing agency where tests are made of fire protection devices for the purpose of assisting it in fixing rates without unfairly discriminating between various devices, and, application having been made to it for credit in the rating of certain risks equipped with a certain device, it has refused to grant the requested credit solely on the ground that the device has not been submitted to or approved by its testing agency, a ruling by the superintendent of insurance, on evidence that the device was as effective as others for which relator had allowed a reduced rate, that relator was guilty of unfair discrimination, is erroneous.

3. Public policy requires that the association should have the power to adopt suitable rules requiring those whose devices are offered as a protection against fire to submit such devices to reasonable tests to be made by the association itself, or under its direction. Discrimination may come after the device has been submitted to the association. Finality would not attach to its action. It may refuse to make the test or the test may be unfair, or the decision may be arbitrary. The powers of the superintendent may then be properly invoked to remove such discrimination.

*People ex rel. N. Y. Fire Ins. Exchange* v. *Phillips*, 203 App. Div. 13, reversed.

(Argued November 20, 1923; decided December 4, 1923.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered January 8, 1923, confirming on certiorari a determination of the state superintendent of insurance that an unfair discrimination existed by reason of the failure of the New York Fire Insurance Exchange to allow a credit in the rating of risks equipped with a certain sprinkler system.

*Joseph S. Auerbach, Charles H. Tuttle* and *Martin A. Schenck* for appellant. The New York Fire Insurance Exchange had a right to prescribe uniform and fair rules in regard to the testing of apparatus for efficiency, as a condition of an application for a reduced rating by its members. Such rules cannot be abrogated at the instance

of a non-member; and insistence upon the right to test before being compelled to issue insurance upon the risk is not " unfair discrimination " but an inherent right and sound policy, recognized by the statute and protected by the Constitution.   In this position there is no challenge whatever of the sovereignty of the state or of the statutory powers of the superintendent.   (*I. C. Comm.* v. *Ry. Co.*, 167 U. S. 479; *Van Patten* v. *C., M. & St. P. Ry. Co.*, 81 Fed. Rep. 545; *Express Cases*, 117 U. S. 1; *Harp* v. *C., O. & G. R. Co.*, 125 Fed. Rep. 445; *Wilson* v. *Telegram Co.*, 18 N. Y. S. R. 78; *Illinois Comm. Co.* v. *Cleveland Tel. Co.*, 119 Fed. Rep. 301; *Sullivan* v. *Postal Tel. Cable Co.*, 123 Fed. Rep. 411; *Tannenbaum* v. *N. Y. Fire Ins. Exch.*, 33 Misc. Rep. 134; *Russell* v. *N. Y. Produce Exch.*, 27 Misc. Rep. 381; *Cohen* v. *Thomas*, 209 N. Y. 407.)   No unfair discrimination is involved in the application of uniform rules.   (*Standard Oil Co.* v. *United States*, 164 Fed. Rep. 376; *Harp* v. *C., O. & G. R. Co.*, 125 Fed. Rep. 445; *C., O. & G. R. Co.* v. *State*, 84 S. W. Rep. 502; *Wynn* v. *Wabash Ry. Co.*, 86 S. W. Rep. 562; *Lough* v. *Outerbridge*, 66 Hun, 103; 143 N. Y. 271; *United States* v. *H. V. Ry. Co.*, 194 Fed. Rep. 234; *Hays* v. *Pennsylvania Co.*, 12 Fed. Rep. 309; *Postal Tel. Cable Co.* v. *Associated Press*, 228 N. Y. 370; *W. U. Tel. Co.* v. *State*, 3 L. R. A. [N. S.] 153; *N. Y. Tel. Co.* v. *Siegel-Cooper Co.*, 202 N. Y. 502.)   Conran, without submitting his device to the investigation of the exchange, had no grievance against it and was not entitled to a rating from it.   (*Johansen* v. *Blume*, 53 App. Div. 526; *Shirtcliffe* v. *Wall*, 68 App. Div. 375; *Moyse* v. *N. Y. Cotton Exch.*, 143 App. Div. 265.)

*Carl Sherman, Attorney-General* (*C. T. Dawes* of counsel), for defendant, respondent.

*Joseph F. Conran* and *Andrew F. Van Thun, Jr.*, for intervener, respondent.   The superintendent has jurisdiction, under section 141 of the Insurance Law, to

supervise insurance rates made by insurance companies or. rate-making associations doing business in this state. The superintendent, of course, cannot and does not undertake to make and fix or promulgate insurance rates in the first instance binding upon the company; but he does undertake and has the power to prevent unfair discrimination in rates between risks having essentially the same hazard and having substantially the same degree of protection against fire. (*People* v. *Kaye*, 212 N. Y. 407; *People ex rel. Broadway & Grove Street Holding Corporation* v. *Adamson*, 183 App. Div. 807; *People ex rel. Adamson* v. *Miller*, 100 Misc. Rep. 302.)

Pound, J. The New York Fire Insurance Exchange is a rate-making association maintaining an office in New York city, which has been authorized under the Insurance Law (Cons. Laws ch. 28) to make rates to be used by fire insurance underwriters. To correct discrimination in the fixing of such rates by such associations, the Insurance Law, section 141, provides suitable power in the superintendent of insurance to entertain complaints and after a full hearing to order its removal.

The important part of section 141 of the Insurance Law, so far as the question of discrimination is concerned, is that no such rate-making association shall fix any fire insurance rate "which discriminates unfairly between risks in the application of like charges or credits or which discriminates unfairly between risks of essentially the same hazards and having substantially the same degree of protection against fire. Whenever it is made to appear to the satisfaction of the superintendent of insurance *that such discrimination exists,* he may, after a full hearing * * * order such discrimination removed." (Insurance Law, § 141, added by Laws of 1911, chap. 460, as amd. by Laws of 1912, chap. 175, and Laws of 1913, chap. 26; since amd. by Laws of 1922, chap. 660.)

The relator has a testing agency known as its " Chicago

Laboratories " where tests are made of fire protection devices for the purpose of assisting it in fixing rates without unfairly discriminating between various devices. Application was made to the relator for credit in the rating of certain risks equipped with the so-called " Conran Sprinkler Head," an invention of the intervener. It was claimed that the Conran device was just as effective as the sprinkler systems for which the relator allowed a reduced rate. The relator refused to grant this reduced rating on the ground that the Conran sprinkler had not been submitted to or approved by the " Chicago Laboratories." The intervener, having had his apparatus subjected to extensive tests and approved by the board of standards and appeals of the city of New York, the body which approves the installation of all fire apparatus in buildings within that city, and by others, complained to the superintendent of insurance that a discrimination against his device existed in the fixing of rates. The matter was finally brought to hearing and determination, the superintendent of insurance holding, in effect, that the determining issue was whether or not the Conran device was just as effective as the sprinkler systems for which the exchange had allowed a reduced rate. He found that it was and ordered the removal of the discriminations.

The question is whether as matter of law the relator discriminated unfairly against the Conran sprinkler head. The effect of the decision of the Appellate Division is that the question before the superintendent of insurance was one of equal fire hazard to be determined by him on such evidence as a complainant sees fit to produce. Under this interpretation of the statute the rate-making association and the insurance companies who must recognize the device as a protection against fire, can be compelled to grant a rate equal to that given the most approved devices which have met all tests, although the exchange has not tested the device, and the owner of the

device has refused to comply with the association's uniform rules for testing devices seeking a preferred rate.

KILEY, J., in a dissenting opinion, stated the rule as follows:

"Discrimination, as used here (in sec. 141 of the Insurance Law) and as applied to this relator, could only be practiced in one of two ways: *1st.* After a test made relator might unfairly find that the intervener's device was not equal as a reducing element in fire hazard to some other device used for like purposes. *2nd.* It might refuse to make the test. It did not default in either of these particulars; it was ordered to remove an 'unfair discrimination' it never imposed — ordered in effect to certify to the efficiency of a device it had not been permitted to test."

The difference between these two interpretations of the statute makes the issue on this appeal.

The question is not whether the Conran sprinkler is as good a sprinkler as any other in use. It may, for the purposes of the argument, be conceded that it is. The question is whether the exchange discriminates unfairly against it; makes a distinction in the way it treats the Conran device to its prejudice and in favor of others in the same class. The jurisdiction of the superintendent of insurance does not extend to the decision as an original proposition of the merits of rival automatic sprinklers. It extends only to the question whether all are treated alike and treated fairly. If equality and fairness to all is found, no discrimination can be said to exist.

Public policy, it would seem, requires that the exchange should have the power to adopt suitable rules requiring those whose devices are offered as a protection against fire to submit such devices to reasonable tests to be made by the exchange itself, or under its direction. The exchange and the fire insurance companies are assuming the financial risk and burden of granting lower rates where protective devices are installed. It has no power to

turn away any applicant who presents his contrivance for approval or to create a monopoly in behalf of the inventions it may seek to favor by refusing its approval of equally reliable automatic sprinklers which have met its test.   But when the applicant for consideration who seeks to obtain the approval of the exchange refuses to submit to reasonable and competent tests to be made by it and insists that the exchange shall act upon such tests as he offers, he seeks to substitute his own method of forming a judgment on the merits of his device for the method adopted by the exchange for the formation of its judgment thereon.   His tests may be as good to the mind of the superintendent as the tests of the exchange, but the point is that the exchange may properly reserve to itself the function of making its own tests under its own rules, so long as it treats all comers with uniform and impartial consideration.

On slight reflection it would seem that the adoption of a uniform method of testing these devices by the exchange itself was well nigh essential for the satisfactory working of the scheme of rate reduction.   The public has the right to rely upon the exchange to protect it from the installation of unsuitable devices.   The exchange has the right to protect itself.   If the applicant were allowed to select his own test, to convince the superintendent of insurance of its efficiency and thus to avoid the test proposed by the exchange, the result would be inconvenience and uncertainty instead of definiteness and uniformity.

The substance of the relator's position is that it will not reduce rates except where the protective device installed has obtained a license from it to be obtained on passing the tests which it imposes for its protection. Would an unlicensed chauffeur be heard to say that he was the best chauffeur in the world and that, therefore, he should be excused from the tests officially imposed on others in the same class and be licensed on some other

basis of determining merit? Would an applicant for appointment in the civil service be heard to say, even if the Constitution did not forbid, that he should be permitted to demonstrate his merit and fitness by other methods than the examination required of others in the same class? Fairness and efficiency assumed, the better the device the more certain the required approval. The fairness and efficiency of the tests made by the Chicago Laboratories are not questioned. Conran is, in fact, seeking a discrimination in his favor, not the removal of a discrimination against him.

Discrimination may come after the device has been submitted to the exchange. Finality would not attach to its action. It may refuse to make the test or the test may be unfair or the decision may be arbitrary. The powers of the superintendent may then be properly invoked to remove such discrimination.

The order of the Appellate Division should be reversed and determination of the superintendent of insurance annulled, with costs.

HISCOCK, Ch. J., CARDOZO, McLAUGHLIN and ANDREWS, JJ., concur; HOGAN and CRANE, JJ., dissent.

Order reversed, etc.