In the Matter of the Application of THE IMPORTERS AND EXPORTERS INSURANCE COMPANY, Appellant, Respondent, on Behalf of Itself and of All Other Fire Insurance Companies Duly Authorized to Transact the Business of Fire Insurance in the State of New York and Similarly Situated, Who Shall Come in and Contribute to the Expense of this Proceeding, for a Peremptory Mandamus Order against SUMNER RHOADES, as Treasurer of the NEW YORK FIRE INSURANCE RATING ORGANIZATION, Respondent, Appellant.

First Department, July 2, 1924.

Insurance — mandamus to compel unincorporated fire insurance rating association, organized under Insurance Law, §§ 141, 141-a, 141-b, to admit petitioner and others to membership — petitioner claims right to services of respondent free from provisions in regular membership agreement that petitioner must abide by all existing rules and rules thereafter made as to limitations of commissions, brokerages and number of agencies — respondent is subject to mandamus only to compel compliance with duty imposed by statute — statute does not require respondent to admit plaintiff to membership free from condition stated — respondent has right to make rules that are not unreasonable, unjust or oppressive — provision as to limitation of commissions, brokerages and number of agencies is valid — said provision not discriminatory.

The respondent, an unincorporated fire insurance rating association organized under sections 141, 141-a and 141-b of the Insurance Law, is subject to mandamus to compel it to accept the petitioner and other fire insurance companies to membership only where there is a duty imposed upon it by the statute in reference to such admission and it has refused to discharge that statutory duty.

The respondent will not be compelled to accept the petitioner and other fire insurance companies as members who are unwilling to sign and abide by the regular membership agreement which provides that the · members shall be subject to all rules as to rates, forms, commissions, brokerages and number of agencies as are or may be necessary in order to comply with the laws of the State of New York or directions of the Superintendent of Insurance, for the respondent has the power under the statute to impose reasonable rules and all who wish to become members are bound to do so subject to all rules and regulations that are not violative of any law, unreasonable, oppressive or unjust.

The rules in question are not unreasonable, neither are they discriminatory, since they apply to all insurance companies seeking membership in the respondent and since membership is open to the petitioner and other fire insurance companies similarly situated upon the same terms as those imposed upon existing members.

Cross-appeals by the Importers and Exporters Insurance Company and by Sumner Rhoades, as treasurer, from a peremptory mandamus order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 16th day of July, 1923, as resettled by an order entered in said clerk's office on the 4th day of September, 1923, directing the defendant to accept the petitioner and all other insurance companies similarly situated and authorized to transact the business of fire insurance in the State of New York and applying therefor, including certain named companies, as subscribers to the service of the New York Fire Insurance Rating Corporation upon certain conditions stated in the order.

The Importers and Exporters Insurance Company appeals from so much of said order, as resettled, which fixes a condition upon which it may become a subscriber, and also appeals from so much of said last-mentioned order as denies its motion to resettle said first order.

Sumner Rhoades, as treasurer, appeals from the whole of said order as resettled.

*Goldman & Unger* [*Samuel P. Goldman* of counsel; *William F. Unger* with him on the brief], for the appellant, respondent.

*Rumsey & Morgan* [*David Rumsey* of counsel; *Louis J. Wolff* with him on the brief], for the respondent, appellant.

Dowling, J.:

These are cross-appeals from a peremptory mandamus order. Defendant appeals upon the ground that petitioner is not entitled to any relief whatever, and petitioner appeals upon the ground that it is entitled to relief greater than it received, or different.

In view of the cross-appeals, the petitioner will hereafter be referred to as such, while the organization will be referred to as the respondent.

Respondent is a voluntary unincorporated association of insur-

ance companies transacting business in the State of New York, and has one hundred and thirty-nine members and thirty-seven subscribers among such companies. These companies have associated themselves by agreement to form a rating organization. The basis of the association is a " Members or Subscribers Agreement " under which all the members and subscribers of the respondent association were admitted to be members therein or subscribers thereto, and which is the only contract in use by the said association.

Respondent was organized as a result of the passage of chapter 660 of the Laws of 1922,* amending section 141 of the Insurance Law (added by Laws of 1911, chap. 460) and adding thereto sections 141-a and 141-b. The chapter referred to took effect on April 13, 1922. Sections 141, 141-a and 141-b of the Insurance Law, as amended and as added by said chapter, provide that every rating organization shall admit to membership or furnish its service, without discrimination, to any person, association or corporation authorized to transact the business of fire insurance within this State, applying therefor; that every rating organization and every person, association or corporation authorized to transact the business of fire insurance within this State shall file with the Superintendent of Insurance, whenever he might call therefor, any rating manual, schedule of rates, rating plan and other information concerning such rates as may be suggested, approved or made by any such rating organization or by any such person, association or corporation, and that every such rating organization shall file with the Superintendent of Insurance a list of members or insurance companies represented or to be represented by it.

Following the enactment of chapter 660 of the Laws of 1922, the respondent organization was formed and on or about October 1, 1922, assumed and took over the rating functions of four then existing similar organizations in this State, each with a limited territorial jurisdiction, known as the New York Fire Insurance Exchange, the Suburban Fire Insurance Exchange, the Underwriters Association of New York State (commonly known as the Syracuse Exchange) and the Buffalo Association of Fire Underwriters. The actual operation of the rating work of the respondent organization is carried on for it by those four territorial branch bodies now designated as the New York City Division, the Suburban Division, the Syracuse Division, and the Buffalo Division, of the respondent New York Fire Insurance Rating Organization. Paragraph 1 of section 141-a of the Insurance Law, in effect April 13, 1922, provided that no fire insurance company shall be a member of, or

---

* Since amd. by Laws of 1923, chap. 436.— [REP.

adopt as a standard, the rates of more than one rating organization for the purpose of rating the same class of risks for the same hazards. This provision of law made it impossible for the companies to continue membership in four separate rating organizations, and, accordingly, the New York Fire Insurance Rating Organization was formed and took over the work of the four old rating organizations. That body is now the only fire insurance rating organization in this State.

The petitioner, an insurance company transacting business in the State of New York, is not and has never been a member or subscriber of the respondent association. The application for a peremptory mandamus order was made to compel the respondent to accept the petitioner and other companies similarly situated as subscribers to the service of the rating organization and to compel the respondent to file the names of the Importers and Exporters Insurance Company and such other companies with the Superintendent of Insurance, pursuant to the provisions of the statute in question. The petitioner's petition for relief, upon which its application to the court is based, asks for a direction that the respondent association "Accept your petitioner, and all other companies similarly situated and authorized to transact the business of fire insurance in the State of New York, as subscribers to the service of the New York Fire Insurance Rating Organization, and to accept from your petitioner and said other companies similarly situated, their duly signed agreements, as subscribers, in the form submitted by the said New York Fire Insurance Rating Organization, with the modification that changes in or additions to the by-laws and rules of the said New York Fire Insurance Rating Organization concerning the limitations of commissions and brokerages and number of agencies, referred to in paragraph VI of said agreement, shall not be binding upon your petitioner and the said other companies without their consent."

The petitioner applied for membership in the respondent and was informed that it would not be admitted, nor furnished with service, unless it signed a membership agreement which in the conceded form in which it was at the time of the trial of this action read: " The companies signing this agreement will maintain and observe (1) this agreement, (2) the by-laws and rules, rates and forms promulgated thereunder, (3) all such rules as to rates, forms, commissions, brokerages and number of agencies as are now or may hereafter be necessary or advisable in order to comply with the laws of the State of New York or directions of the Superintendent of Insurance thereunder, (4) the rules and regulations governing commissions and brokerages and number of agencies which have been heretofore established in their several territories by the New York

City, the Suburban and the Buffalo divisions, and which are adopted respectively as the rules and regulations of this organization, and further agree to submit for certification all daily reports and indorsements in territories where stamping offices are or may be maintained."

The petitioner refused to sign any agreement which bound it to maintain and observe the rules regarding commissions and broker-ages and number of agencies, claiming that the respondent has no power under the statute to make such rules. The respondent is willing to admit to its membership the petitioner or any other insurance company upon signing its membership agreement, but it claims the right and power to make rules in regard to commissions to be paid to agents, to the number of agencies and to other matters which enter directly into the cost of procuring business, in order to restrict within proper limits the competition for, and the expense of procuring, business.

The Superintendent of Insurance of the State of New York has made an affidavit in this proceeding in which he says:

" I have familiarized myself with the details of the organization and methods of operation of the New York Fire Insurance Rating Association, which took over the rating functions of the four local exchanges. The basic agreement of the defendant Association with the amendments and other information have been filed with me.

" I have approved this basic agreement as amended and of the steps taken by the members and subscribers of the defendant Association to conform to the sections of the Insurance Law, and the same have had my approval. I believe the basic Members or Subscribers Agreement of the defendant Association to be well adapted to the purpose for which it is used, and that the subject of the control of its membership as to commissions, brokerages and limitation of agencies is properly within the jurisdiction of the defendant Association, and that the inclusion of such a provision in the basic agreement is necessary and proper for the protection and the benefit of the public.

" Rules upon these subjects are also necessary for the mainte-nance of good practices in the insurance business and constitute an important part of the supervision and control contemplated by the Rating Law itself. I have examined the petition filed in support of this application and, in my opinion, the contention that assent to the Members or Subscribers agreement of the defendant Association would be destructive of the business of any of the petitioning com-panies is without foundation. Any of them is in position to become a member or subscriber without unfavorable effect upon its business.

" The petitioning companies have up to the present time failed

to comply with the provisions of the Rating Law by filing rates with the Superintendent of Insurance, and their attempted justification of this position upon the basis of the facts shown in their petition is without foundation and should be rejected by the court."

The position of the petitioner is, that it is entitled to admission to membership in the respondent without being compelled to agree to submit to any rules limiting commissions, brokerages and number of agencies that the respondent may hereafter make, contending that the latter is without authority under the law to pass such rules.

The peremptory mandamus order appealed from provides:

" Ordered that the said Sumner Rhoades as Treasurer of the New York Fire Insurance Rating Organization be and he hereby is peremptorily directed to forthwith accept the petitioner and all other insurance companies similarly situated and authorized to transact the business of fire insurance in the State of New York and applying therefor, including the following named companies, to wit: " (Here follows a list of insurance companies) " as subscribers to the service of the New York Fire Insurance Rating Organization, upon the subscription by said companies and delivery to the said Sumner Rhoades as said Treasurer of their duly signed agreements as subscribers in the form heretofore submitted by the said New York Fire Insurance Rating Organization with the following changes:

" 1. Clause 3 of paragraph VI reading as follows:

" ' 3. All such rules as to rates, forms, commissions, brokerages and number of agencies as are now or may hereafter be necessary or advisable in order to comply with the laws of the State of New York or directions of the Superintendent of Insurance thereunder; ' shall be struck out and

" 2. The following paragraph shall be added to said agreement:

" ' VIII. The signature of the undersigned to this agreement shall not be deemed to be in any way an assent to any changes in or additions to the by-laws and rules of the said New York Fire Insurance Rating Organization or of any of the several branch bodies named concerning commissions, brokerages and number of agencies, anything herein contained to the contrary notwithstanding.'

"And it is further ordered that upon receipt from any such company or companies by said Sumner Rhoades of such duly signed agreement, said Sumner Rhoades, as Treasurer, shall forthwith furnish or cause to be furnished without discrimination the usual service and to supply or cause to be supplied the rates of the said New York Fire Insurance Rating Organization, all at the usual charges of the said Organization to said company or companies, and shall forthwith file the name or names of said companies with

the Superintenent of Insurance, as a company or companies to which the service of the said New York Fire Insurance Rating Organization is extended and to which its rates now on file with the Superintendent apply."

The respondent is an unincorporated association, and no order of mandamus can issue against it except where there is a duty imposed by statute upon it and it has refused to discharge such statutory duty. (*Matter of Weidenfeld* v. *Keppler*, 84 App. Div. 235; affd., on opinion below, 176 N. Y. 562.)

I am of the opinion that the petitioner has not brought its claim within this requirement. The respondent is not arbitrarily refusing to accept as a member any particular insurance company. It is a voluntary association and it has the right to restrict its membership to those who are willing to sign the uniform agreement which constitutes its contractual relationship with its members. As incidental to its very existence, it has the right to make rules or by-laws governing the transaction of its business and binding upon its members so long as they are not violative of any law, unreasonable, oppressive or unjust. The objection of petitioner to accepting the rules that may hereafter be made by respondent is that the latter has no authority to make them, no such power being conferred by the statute. But the power given to respondent under the statute was to impose reasonable rules. It is within common knowledge that rating organizations for fifty years have been controlling the limitation of commissions, the number of agents and brokerage generally. It seems to me that such subjects are so intimately allied with the making of rates and form such an integral part thereof, that their handling and supervision by rules are a necessary part of, and adjunct to, the rate-making power. I believe that respondent, as a voluntary unincorporated association, has the legal right to make rules and regulations upon the three subjects enumerated, subject to the determination of their reasonable and non-discriminatory nature, first by the Superintendent of Insurance and then by the courts.

Petitioner claims that any such agreement as that asked for in the contract of membership is discriminatory. As I view its claim it is, as stated by the learned court at Special Term in its opinion: " If the rating organization can provide that it will not admit to membership or furnish its service to any insurance company that will not in advance agree to conduct its business in a manner approved by the association or will not conform to the rules thereafter made by the association, there will be no discrimination as between the members of the association or between those receiving its service, but those admitted to the benefits of membership or

service will include only organizations willing to accept such restrictions, and this will constitute a discrimination against the others who may prefer to run their business in a different manner."

I am unable to see wherein such a requirement can furnish a basis for a charge of discrimination. Its effect certainly is to secure absolute equality in standing and treatment between all members of the organization. How can it be said to make any discrimination as against those outside the body, who prefer to run their business in their own way, without the restrictions which its members deem wise to submit to? Membership in the respondent is open to the petitioner upon the same terms as to any one else, and upon which all its present members have joined — acceptance not merely of the basic contract of membership, but of such rules as may hereafter be lawfully adopted, proper in character and within the scope of its authority; a right which every organization has and has always had.

A real discrimination would exist if the condition created by the order appealed from should prevail. Then the organization would consist of one class of members, bound by all the conditions of the membership agreement, including clause 3 of paragraph VI, and bound as well by future changes in the by-laws and rules hereafter lawfully made; and a second class, composed of the new members brought in by the court, who would not be bound by clause 3 of paragraph VI, and who would be absolutely freed from the operation of any new rules or by-laws concerning commissions, brokerages and number of agencies, no matter how necessary, advisable or fair they might be. This would be establishing a real discrimination as against the present members of the organization, for the benefit of a new class of members, who have been offered and refused membership upon a perfect equality with all the others. The test is, as laid down in *People ex rel. New York Fire Insurance Exchange* v. *Phillips* (237 N. Y. 167, 172): "If equality and fairness to all is found, no discrimination can be said to exist."

The peremptory mandamus order, in so far as it is appealed from by respondent, should be reversed, with ten dollars costs and disbursements, and the motion denied in its entirety, with ten dollars costs, and the appeals taken by the petitioner from the mandamus order and from the order of resettlement should be dismissed.

CLARKE, P. J., SMITH, McAVOY and MARTIN, JJ., concur.

Order of July 16, 1923, as resettled by order of September 4, 1923, reversed, with ten dollars costs and disbursements, and motion for peremptory mandamus denied, with ten dollars costs; appeal taken by petitioner from said orders dismissed.